UNITED STATES DISTRICT COURT,
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHANDRA LASONDE, ALLEN BLAKE<br><br>Plaintiffs,<br><br>-Against-<br><br>Correction Officers' Benevolent Association, Inc., and Norman Seabrook in his official and individual capacity as President of Correction Officers' Benevolent Association, Inc., and Elias Husamudeen in his official and individual capacity as Executive Board member of Correction Officers' Benevolent Association, Inc., The City of New York, Dora Schriro, in her official and individual capacity as Commissioner of the New York City Department of Correction, Larry Davis, in his official and individual capacity as Chief of Department of the City of New York Department of Correction.<br><br>Defendants. | COMPLAINT<br><br>RECEIVED<br>JAN 13 2010<br>U.S.D.C. S.D. N.Y.<br>CASHIERS<br><br>Docket No. |

Plaintiffs, CHANDRA LASONDE, and ALLEN BLAKE, by and through counsel, allege

the following upon information and belief, except as to those allegations concerning the

Plaintiffs, which are alleged upon personal knowledge. The sources of the Plaintiffs'

information and belief are based upon, among other things, the Plaintiffs' investigation relating

to the Plaintiffs' causes of action, and the Plaintiffs' personal experiences of the claims in

question. The Plaintiffs believe that further substantial evidentiary support will exist for the

allegations after a reasonable opportunity for discovery.

## SUMMARY OF CLAIMS

### A. The Plaintiffs' Causes of Action

1. The Plaintiffs bring claims pursuant to 29 U.S.C. §159(a), and 28 U.S.C. § 1337, as a

   result of the Defendants Correction Officers' Benevolent Association, Inc. ("COBA"),

   and Norman Seabrook's violation of COBA's Duty of Fair Representation to Plaintiffs

   where said defendants acting arbitrarily and in bad-faith asserted false allegations of

   insurance fraud against the Plaintiffs, then coerced the Plaintiffs' resignations as a result

   of those false allegations, by falsely imprisoning the Plaintiffs in the Defendant COBA's

   office and denied the Plaintiffs' request[1] for a "special hearing" as called for by the

   COBA constitution and by-laws described herein, on the bases of said union defendants'

   said false allegations, as described herein, and then said union defendants negotiated or

   otherwise induced the Plaintiffs' New York City Department of Correction ("DOC")

   Employer to retaliate against the Plaintiffs on the basis of the said union defendants' said

   false allegations in violation of DOC Classification No. 7504R-A III(F)(1) where the

   Plaintiffs were placed on modified duty[2] when neither of the Plaintiffs (1) had not been

   arrested,  (2) had not been indicted by a grand jury, (3) had not been charged with

---

[1] The Defendant COBA's by-laws and constitution provide that an executive board member, who has been disciplined, may have a special hearing at which the merits of the allegation that form the basis of that discipline will be reviewed by the union and a vote shall be had with regard as to whether the executive board member's discipline shall stand.  In furtherance of such a hearing, the disciplined executive board member is required to serve her request upon the "recording secretary", "Karen Belfield".  Mrs. LaSonde on behalf of the plaintiffs issued charges against the Defendant Seabrook, in so doing Mrs. LaSonde directed her request for a special hearing to Karen Belfield, specifically.  Nonetheless, the Defendant COBA rejected that request, because although Mrs. LaSonde specifically named and addressed her request to Karen Belfield, Mrs. LaSonde incorrectly called Ms. Belfield the "responding secretary" rather than the "recording secretary".  Additionally, at a General Membership meeting of the union body, members thereof attempted to present their motion for such a hearing, but those requests were rejected by the Defendants Seabrook and COBA.

[2] For purposes of the Defendant DOC, "modified duty" is the equivalent of what "administrative duty" is for the Police Department, as the correction officer is effectually stripped of their inmate supervision powers (the primary purpose of their employment).  In this case, Mr. Blake spends his day seated at a table with several other officers who have been placed on "modified duty" inhaling transportation fumes that exacerbate his bronchitis condition.  Mrs. LaSonde spends her days effectually as a New York State Court Officer.

misconduct or incompetence and (4) were not unfit for ordinary assigned duty, where said conduct by said union defendants resulted in an improper intervention of said union defendants in the Plaintiffs grievance process, as such improper intervention, namely said union defendants' said false allegations were the impetus of the Plaintiffs' retaliatory adverse personnel action, which they have had to grieve without the benefit of their rightful union representation, because the union is source of said DOC's retaliatory adverse personnel action.

2. The Plaintiffs bring claims pursuant to 29 U.S.C. § 185(a), and 28 U.S.C. § 1337, as a result of the Defendants COBA, and Seabrook's violation of COBA's Duty of Fair Representation to Plaintiffs, where said defendants acting arbitrarily and in bad-faith asserted false allegations of insurance fraud against the Plaintiffs, then coerced the Plaintiffs' resignations as a result of those alleged false allegations, by falsely imprisoning the Plaintiffs in the Defendant COBA's office and denied the Plaintiffs' requisite "special hearing" as called for by the COBA constitution and by-laws described herein, on the bases of said union defendants' said false allegations, as described herein, and then said union defendants negotiated or otherwise induced the Defendant DOC, to retaliate against the Plaintiffs on the basis of the said union defendants' said false allegations in violation of 7504R-A III(F)(1) where the Plaintiffs were placed on modified duty where the Plaintiffs (1) had not been arrested, (2) had not been indicted by a grand jury, (3) had not been charged with misconduct or incompetence and (4) were not unfit for ordinary assigned duty, where said conduct by said union defendants resulted in a violation of the contracts between COBA and DOC, where the former defendant entity, is contractually obligated to represent the Plaintiffs fairly, against the latter defendant

entity, but because the union defendants' said false allegations form the crux of the DOC defendants' said retaliatory disciplinary conduct (i.e. placement on modified duty, stripping the Plaintiffs substantially of their law enforcement powers), the contractual obligations between COBA and the DOC defendants have been breached, because under those circumstances it is impossible for the COBA defendants to provide the Plaintiffs with their right to fair representation, as that would call for COBA to advocate against itself, which COBA has repeatedly refused to do in denying the Plaintiffs and other union members' requests for a special hearing as to the merits of the union defendants' said false allegations against the Plaintiffs, conclusively illustrating that the Defendant COBA will not provide the Plaintiffs with their right to fair representation.

3.  The Plaintiffs bring claims pursuant to 29 U.S.C. § 187(a), (b), and 28 U.S.C. § 1337, as a result of the Defendants COBA, and Seabrook's violation of COBA's Duty of Fair Representation to Plaintiffs where said defendants acting arbitrarily and in bad-faith asserted false allegations of insurance fraud against the Plaintiffs, then coerced the Plaintiffs' resignations as a result of those alleged false allegations, by falsely imprisoning the Plaintiffs in the Defendant COBA's office and denied the Plaintiffs' requisite "special hearing" as called for by the COBA constitution and by-laws described herein, on the bases of said union defendants' said false allegations, as described herein, and then said union defendants negotiated or otherwise induced the Defendant DOC to retaliate against the Plaintiffs on the basis of the said union defendants' said false allegations in violation of 7504R-A III(F)(1) where the Plaintiffs were placed on modified duty where the Plaintiffs (1) had not been arrested, (2) had not been indicted by a grand jury, (3) had not been charged with misconduct or incompetence and (4) were not

Page **4** of **21**

entity, but because the union defendants' said false allegations form the crux of the DOC defendants' said retaliatory disciplinary conduct (i.e. placement on modified duty, stripping the Plaintiffs substantially of their law enforcement powers), the contractual obligations between COBA and the DOC defendants have been breached, because under those circumstances it is impossible for the COBA defendants to provide the Plaintiffs with their right to fair representation, as that would call for COBA to advocate against itself, which COBA has repeatedly refused to do in denying the Plaintiffs and other union members' requests for a special hearing as to the merits of the union defendants' said false allegations against the Plaintiffs, conclusively illustrating that the Defendant COBA will not provide the Plaintiffs with their right to fair representation.

3.  The Plaintiffs bring claims pursuant to 29 U.S.C. § 187(a), (b), and 28 U.S.C. § 1337, as a result of the Defendants COBA, and Seabrook's violation of COBA's Duty of Fair Representation to Plaintiffs where said defendants acting arbitrarily and in bad-faith asserted false allegations of insurance fraud against the Plaintiffs, then coerced the Plaintiffs' resignations as a result of those alleged false allegations, by falsely imprisoning the Plaintiffs in the Defendant COBA's office and denied the Plaintiffs' requisite "special hearing" as called for by the COBA constitution and by-laws described herein, on the bases of said union defendants' said false allegations, as described herein, and then said union defendants negotiated or otherwise induced the Defendant DOC to retaliate against the Plaintiffs on the basis of the said union defendants' said false allegations in violation of 7504R-A III(F)(1) where the Plaintiffs were placed on modified duty where the Plaintiffs (1) had not been arrested, (2) had not been indicted by a grand jury, (3) had not been charged with misconduct or incompetence and (4) were not

unfit for ordinary assigned duty, where said conduct by said union defendants resulted in unlawful conduct by which, said union defendants negotiated or otherwise induced the Defendants Dora Schriro and Larry Davis to not perform any services, namely, to retaliate against the Plaintiffs by not using the Plaintiffs' services where they were placed on modified duty in violation of 7504R-A III(F)(1), as noted above, solely upon the false basis of said union defendants' aforementioned false allegations.

4. The Plaintiffs bring claims pursuant to 42 U.S.C. § 1983, as a result of the Defendants the City of New York, DOC, Dora Schriro and Larry Davis for retaliating against the Plaintiffs in placing the Plaintiffs on modified duty in violation of 7504R-A III(F)(1) on the basis of the Defendants Seabrook and COBA's false allegation that the Plaintiffs engaged in insurance fraud where as detailed herein, the Plaintiffs were placed on modified duty where the Plaintiffs (1) had not been arrested, (2) had not been indicted by a grand jury, (3) had not been charged with misconduct or incompetence or (4) were not unfit for ordinary assigned duty, because the Plaintiff's had exercised their First Amendment Rights to assert charges of misconduct against the Defendant Seabrook.

5. The Plaintiffs bring claims pursuant to 42 U.S.C. § 1983, where the Defendants the City of New York, DOC, Dora Schriro, Larry Davis, Seabrook and COBA conspired to retaliate against the Plaintiffs in placing the Plaintiffs on modified duty in violation of 7504R-A III(F)(1) on the basis of the Defendants Seabrook and COBA's false allegation that the Plaintiffs engaged in insurance fraud as detailed herein where the Plaintiffs were placed on modified duty where the Plaintiffs (1) had not been arrested, (2) had not been indicted by a grand jury, (3) had not been charged with misconduct or incompetence and (4) were not unfit for ordinary assigned duty, where the Defendants Seabrook and COBA

Page **5** of **21**

participated in the municipal defendants' wrongdoing, rendering said defendants completely unable to assist the Plaintiffs against such retaliation, because the Plaintiff's had exercised their First Amendment Rights to assert charges of misconduct against the Defendant Seabrook.

6. The Plaintiffs' claims for breach of the Duty of Fair Representation against the Defendants Seabrook and COBA are not preempted, because said COBA defendants' breach of their Duty of Fair Representation results from said defendants acting arbitrarily and in bad-faith as detailed herein in violation of 29 U.S.C. §§ 159(a), 185(a), (187)(a)(b), and 28 U.S.C. § 1337, where said union defendants acts of allowing, negotiating or otherwise inducing the municipal defendants to retaliate against the Plaintiffs in violation of 7504R-A III(F)(1) as detailed herein violates the contract between the Defendants COBA and the DOC, where the impetus of such violation is the aforementioned union defendants' false allegations of insurance fraud against the Plaintiffs, which wholly renders the Defendant COBA unable to comply with its Duty of Fair Representation to the Plaintiffs, as well as the union defendants contractual obligation between COBA and DOC, as to do so would place the Defendant COBA in a position which it diametrically opposes (1) having falsely claimed the Plaintiffs committed the insurance fraud at the root of the Defendant DOC's aforementioned retaliatory conduct against the Plaintiff and (2) having denied the repeated requests of the Plaintiffs and the union members for a special hearing to determine the merits of said union defendants' false allegations of insurance fraud.

7. The Plaintiffs bring a claim pursuant to state law against the Defendants Seabrook and COBA for False Imprisonment wherein said defendants intended to confine the Plaintiffs,

and the Plaintiffs were conscious of the confinement and did not consent to the confinement, and that confinement was not otherwise privileged.

8. The Plaintiffs bring claims pursuant to state law against the Defendant Seabrook for libel and slander wherein the Defendant Seabrook accused both Plaintiffs of having engaged in a conspiracy to defraud the Defendant COBA of $10,000 in insurance policy monies, wherein the Defendant Seabrook initially accused of the Plaintiffs of such conduct before the entire COBA Executive Board, then repeated those slanderous allegations before the various union members at a special meeting, and further repeated those allegations in an article published the week of December 25, 2009, in The Chief weekly newspaper wherein the Defendant Seabrook alleged that both of the Plaintiffs had been removed as Executive Board members because they allegedly falsified documents so as to defraud the Defendant COBA of said $10,000, which the Defendant Seabrook alleged both Plaintiffs took receipt thereof, and because both of the Plaintiffs were allegedly incompetent.

9. The Defendant Seabrook's false statements that the Plaintiffs falsified documents and defrauded the Defendant COBA of the aforementioned $10,000 in insurance policy monies, having been intentionally and maliciously told to the aforementioned audiences, and The Chief, which later published those statements that dishonor, discredit, disparage or otherwise injure the Plaintiffs' good name and reputation were designed to induce an unsavory or dishonorable reputation of the Plaintiffs in the minds of a substantial amount of people, and the Defendant Seabrook either knew, should have known or had reason to know those statements to be untrue.

Page 7 of 21

10. The Plaintiffs bring claims pursuant to state law against the Defendants COBA and Elias Husamudeen for libel and slander wherein the Defendant Husamudeen had been eye-witnessed preparing three defamatory leaflets laced with racially and sexually discriminatory false information which the Defendants COBA and Husamudeen disseminated throughout the DOC community to DOC employees.

11. The Defendants COBA and Husamudeen's dissemination of the three defamatory false racially and sexually discriminatory leaflets having been intentionally and maliciously told and disseminated to the DOC community of employees, resulted in the publication of those statements that dishonor, discredit, disparage or otherwise injure the Plaintiffs' good name and reputation that were designed to induce an unsavory or dishonorable reputation of the Plaintiffs in the minds of a substantial amount of people, and the Defendants COBA and Husamudeen either knew, should have known or had reason to know those statements to be untrue.

12. The Plaintiffs bring a claim pursuant to state law against the Defendant COBA for breach of its fiduciary duty to the Plaintiffs where there exists between COBA and the Plaintiffs a duty for the Defendant COBA to act for and to give advice to the Plaintiffs for their benefit upon matters within the scope of their relationships, wherein the Defendants COBA and Seabrook's acts of falsely accusing the Plaintiff's of insurance fraud, denying the Plaintiffs and the union members' requests for a special hearing and thereafter negotiating or otherwise inducing the Defendant DOC's retaliatory disciplinary conduct against the Plaintiffs, prevented the COBA defendant from acting within its fiduciary role, as such actions resulted in the Defendant COBA being wholly unable to afford the Plaintiffs with their rightful union protections.

13. The Plaintiffs bring claims for negligent infliction of emotional distress against all of the defendants wherein, said defendants' conduct of retaliating against the Plaintiffs, falsely accusing the Plaintiffs of insurance fraud and denying the Plaintiffs their due rights, evidences special circumstances, and evidencing the genuineness of the Plaintiffs' claims.

14. The Plaintiffs bring claims for reckless infliction of emotional distress against all of the defendants wherein, said defendants' conduct of retaliating against the Plaintiffs, falsely accusing the Plaintiffs of insurance fraud and denying the Plaintiffs their due rights, evidences special circumstances, evidencing the genuineness of the Plaintiffs' claims.

15. The Plaintiffs bring claims for intentional infliction of emotional distress against all of the defendants wherein, said defendants' conduct in retaliating against the Plaintiffs, and falsely accusing the Plaintiffs of insurance fraud and denying the Plaintiffs their due rights, amounts to extreme and outrageous intentional conduct where said defendants' conduct of retaliating against the Plaintiffs, falsely accusing the Plaintiffs of insurance fraud, and denying the Plaintiffs their due rights was done with disregard of a substantial probability of causing, severe emotional distress.

16. The Defendants Seabrook, and COBA, failed to comply with the COBA Constitution and By-Laws under Article IX, Section 1, entitled "Charges of Misconduct", which provides in pertinent part that,

> Whenever charges of misconduct, misfeasance, nonfeasance are preferred against any member of the Association or Officers the charges shall be filed in writing in duplicate with the Recording Secretary. A written copy of such charges specifying the nature of the offense of which he or she is accused shall be served by the Recording Secretary upon [sic] accused personally, or by registered, return receipt requested mail. These charges will follow [sic] procedures [sic] as in Article IV, Section IV.[3]

---

[3] Article IV, Section IV, reads in pertinent part, "...If the individual is an Executive Board member or an institutional delegate or alternate a special meeting shall be called promptly for the purpose of resolving the charges.

17. As of November 20, 2009, and forward, the Plaintiffs have been members of the New York City Department of Corrections for many years.

18. Up until Mr. Blake's below mentioned coerced resignation, he had been a member of the Defendant COBA's Executive Board for approximately four years. Mr. Blake is up for re-election in 2012.

19. Upon until Mrs. LaSonde's below mentioned coerced resignation, she had been a member of the Defendant COBA's Executive Board for approximately three years. Mrs. LaSonde is up for re-election in 2012.

20. As members of the Defendant COBA's Executive Board, Mrs. LaSonde and Mr. Blake each received a monthly stipend of more than $5,000.

21. During their tenure as Correction officers, the Plaintiffs ascended to the elected offices of Executive Board Members of the Defendant COBA, operating their respected offices with strikingly upright integrity.

22. Nonetheless, on or about November 20, 2009, immediately after the funeral of a respected fellow officer, which Mrs. LaSonde had actively assisted in preparing, as previously was the case in numerous other instances, the Defendant Seabrook ordered everyone back to the Defendant COBA's offices.

23. The Plaintiffs thought that the Defendant Seabrook's ordering of an emergency meeting was in regards to some unspecified union emergency, which was not unusual.

24. In returning to the Defendant COBA's offices, the Plaintiffs were the last two persons to return thereto. When the Plaintiff's arrived at the Defendant COBA's offices, everyone was already situated in a conference room. Upon the Plaintiff's entering into that

---

If the charges are upheld, the office shall be declared vacant and shall be filled by the Executive Board until the term expires."

conference room, the Plaintiff's eye-witnessed the Defendant Seabrook ranting and raving and banging on the conference table exclaiming to Mrs. LaSonde, "I got you", and claiming that Mrs. LaSonde and Mr. Blake had conspired to get $10,000 in insurance policy monies, which is collectable upon the death of a union member's spouse, which in this case happened to be the former spouse of Mr. Blake.

25. Mr. Blake who had been married to his now deceased former wife[4] (Pearliner Major) for nearly 34 years, but was separated therefrom for more than 29 of those nearly 34 years, was under the belief that he was still in the midst of divorce proceedings, at the time he applied for the aforementioned spousal death benefits. Therefore, Mr. Blake made an application for those spousal death benefits.

26. Because of the aforementioned estranged time period, which Mr. Blake was separated from his deceased former wife, Mr. Blake was accustom to saying that he was not married, during that time period, it was not that such customary expression was used in reference to Mr. Blake's divorce from his deceased former wife.

27. Unbeknownst to Mr. Blake, because he never received the divorce decree, his divorce proceedings with his former and now deceased wife, were completed in July 2009. It was only after the Defendant Seabrook's aforementioned slanderous allegations that Mr. Blake first learned of the divorce decree and saw that alleged document.

28. According to the City of New York's "Certificate of Marriage Registration" documents, Mr. Blake married his wife on November 15, 1975.

29. Pursuant to Mr. Blake's Judgment of Divorce filed July 7, 2009, the state supreme court dissolved Mr. Blake's marriage on the grounds of abandonment.

---

[4] According to Mr. Blake's benefits application material described herein, Ms. Major died on September 29, 2009.

30. The file folder that contained Mr. Blake's COBA "Dependent Death Insurance Claim" ("DDIC") application, as discussed in paragraphs 32 and 33, contained Mr. Blake's judgment of divorce papers, including the "Affidavit of Service by Mail" to Mr. Blake's now deceased former wife, Pearliner, dated July 21, 2009, swearing that service of the judgment of divorce with notice of entry was effected upon Pearliner. That file folder did not contain any notation of any sort that that the judgment of divorce had been mailed to Mr. Blake.

31. According to Mr. Blake's DDIC application, which included Mrs. LaSonde's cover letter dated October 23, 2009, Mr. Blake completed that application on October 23, 2009.

32. Mr. Blake's DDIC application was signed by Vincent A. Coppola, the Defendant COBA's former "Retiree Consultant".

33. The Defendants COBA and Seabrook attempted to coerce Mr. Coppola to say that his signature upon the prudential application was forged. However, Mr. Coppola refused such coercion and informed said defendants that that was in fact his signature on Mr. Blake's DDIC application and not a forged signature thereof. Mr. Coppola later submitted his resignation as the Defendant COBA's Retiree Consultant.

34. During Defendant Seabrook's aforementioned ranting and raving, he accused Mr. Blake of lying with regard to his knowledge of whether Mr. Blake knew that a divorce decree had been issued at the time Mr. Blake made his application for said death benefits, and that as such, Defendant Seabrook continued, Mr. Blake had committed fraud, and in furtherance of that alleged fraud, Defendant Seabrook claimed that Mr. Blake and Mrs. LaSonde had falsified documents.

35. During the Defendant Seabrook's aforementioned ranting and raving, he was waiving a
    file folder with documents, one of which the Defendant Seabrook identified as Mr.
    Blake's alleged divorce decree.

36. Mrs. LaSonde retrieved said file folder from the Defendant Seabrook and reviewed the
    documents contained therein.  Mrs. LaSonde informed the Defendant Seabrook that there
    were material documents missing from that file folder which appeared to possess some of
    the contents of Mr. Blake's death benefits application.

37. The Defendant Seabrook accused Mrs. LaSonde of conspiring to assist Mr. Blake in
    obtaining the $10,000 in death benefits in question, asking Mrs. LaSonde why she would
    process Mr. Blake's death benefits application when she should not have been doing such
    policy work.  In response thereto, Mrs. LaSonde reminded the Defendant Seabrook that
    he had been aware that Mrs. LaSonde had been doing such work on a routine basis for the
    past three-years, prior to the day in question.

38. Doing the aforementioned events Mrs. LaSonde explicitly questioned whether the other
    executive board members (except for Mr. Blake), and Defendant Seabrook had conspired
    to set her up.

39. Thereafter, the Defendant Seabrook took Mr. Blake outside of the conference room
    where the two of them spoke.  During that conversation, Mr. Blake informed the
    Defendant Seabrook that at the time he completed and commenced the application for
    death benefits, Mr. Blake was unaware that he had been officially declared divorced,
    because he had never received a divorce decree and had no knowledge of its existence.
    Additionally, Mr. Blake informed the Defendant Seabrook that he had deposited the
    check for the death benefits, but that he would immediately return such monies, as he had

just learned he was divorced on November 20, 2009, and had just seen the alleged divorce decree on that date for the first time, as well.

40. Mrs. LaSonde did not know anything of Mr. Blake's divorce.

41. The Defendant Seabrook refused to accept Mr. Blake's return of the insurance policy monies, and continued to accuse Mr. Blake and Mrs. LaSonde of committing fraud to obtain those monies.

42. Upon refusing to accept Mr. Blake's return of the monies, the Defendant Seabrook demanded Mr. Blake and Mrs. LaSonde's resignation and informed the two of them that they could not leave the building until they submitted their respective resignations from the Defendant COBA's executive board.

43. In furtherance of the Defendant Seabrook's order that the Plaintiffs not be allowed to leave the building until they had submitted their resignations, the Defendant Seabrook ordered executive board members to trail the Plaintiffs to prevent them from exiting until they had submitted their resignations. To that end the Defendant Elias Husamudeen encaged Mrs. LaSonde in her office where the Defendant COBA provided her with a prepared statement of resignation.

44. Similarly, the Defendant COBA provided Mr. Blake with a prepared statement of resignation. Two executive board members remained outside of Mr. Blake's office until he completed the prepared resignation statement under the expressed orders of the Defendant Seabrook that such persons were not to allow Mr. Blake to leave the premises until he completed that prepared statement of resignation.

45. Mr. Blake and Mrs. LaSonde understood that the Defendant Seabrook intended to confine them until they tendered their prepared resignations. Mr. Blake and Mrs. LaSonde were

conscious of their confinement. Mr. Blake and Mrs. LaSonde did not consent to the confinement. Additionally, Mr. Blake and Mrs. LaSonde's confinement was not otherwise privileged.

46. In furtherance of the Plaintiffs' false imprisonment, the Defendant Seabrook demanded that the Plaintiffs return all union property (e.g., union vehicle) before they were allowed to leave the building.

47. Mr. Blake and Mrs. LaSonde submitted their resignations so that they could escape confinement. Nonetheless, immediately thereafter, both Mrs. LaSonde and Mr. Blake rescinded their aforementioned resignations, requested reinstatement and a special hearing regarding the Defendant COBA's aforementioned claims of insurance fraud.

48. Mr. Blake provided a post dated check to Prudential for the aforementioned insurance policy monies that, was to be cashed upon the clearing of the deposited check. Prudential accepted Mr. Blake's check. However, after having been contacted by the Defendant Seabrook, who later provided Prudential with a COBA check for said monies, Prudential said that it would not accept Mr. Blake's check. Additionally, Prudential informed Mr. Blake that the Defendant Seabrook had informed Prudential that the matter was under the investigation of the New York City Inspector General's Office. Nonetheless, Prudential ultimately decided to accept Mr. Blake's check and returned the Defendant COBA's check.

49. In accepting Mr. Blake's check, Prudential issued monies to Mr. Blake for overpayment and noted that despite the fact that Mr. Blake had recently become divorced from his wife, under the terms of the insurance policy, he could have still received the death benefits, because it was simply a matter of who was named as the members' (Mr.

Page 15 of 21

Blake's) actual spouse, irrespective as to whether the union would later become divorced
so long as they were in fact married at the time the policy was taken out.

50. In a letter dated November 23, 2009, Mr. Blake mailed a letter to Prudential, enclosing a
post dated check in the amount of $10,000.00, which Mr. Blake noted that he was
returning as a result of an error, in which he did not know that he had been divorced from
his now deceased former wife. Mr. Blake's express mail receipt noted that he mailed that
document out the following day, November 24, 2009.

51. In a letter dated December 23, 2009, Prudential confirmed receipt of Mr. Blake's check
and return of the insurance payment.

52. In a letter dated November 23, 2009, Defendants COBA and Seabrook sent Prudential a
letter along with a check for $10,008.80, which was ultimately returned by Prudential.

53. In the days that followed the November 20, 2009 events, Mr. Blake saw the Defendant
Seabrook who stated to Mr. Blake, "you fucked up" "you give me her (referring to Mrs.
LaSonde) and I'll let you go". Mr. Blake refused to consent to the Defendant Seabrook's
demand that Mr. Blake lie and say that Mrs. LaSonde knew that Mr. Blake was divorced
at the time he completed his death benefits application.

54. In the wake of the aforementioned event, the union membership convened at a General
Membership meeting on or about December 16, 2009, during which they attempted to
present numerous special motions for a special hearing with regard to the Defendants
Seabrook and COBA's removal of Mr. Blake and Mrs. LaSonde numerous times, only to
have the Defendants Seabrook and COBA refuse those motions to be heard, and thus
voted on.

55. The governing body of the union (approximately 300 members), made approximately fifteen motions to the Defendants Seabrook and COBA, to vote on reinstatement of the Plaintiffs, to the Defendant COBA's Executive Board, as well as a special hearing with regard to the union defendants allegations of insurance fraud. The union defendants refused to accept all of those motions as required by the constitutions and bylaws of the union.

56. During the General Membership meeting, the Defendant Seabrook, speaking in behalf of himself and the Defendant COBA stated that the Plaintiffs were guilty of insurance fraud and forgery, and that the union would only resolve the instant matter before a judge in a court of law.

57. Moreover, during that General Membership meeting, before the Defendants COBA and Seabrook, Mr. Blake informed everyone of Seabrook's statement that if Mr. Blake cooperated with Seabrook in alleging that Mrs. LaSonde knew that Mr. Blake was divorced at the time he completed the October 23, 2009 DDIC application, he would allow Mr. Blake to go free. In response thereto, Seabrook said that after knowing me for forty fucking years you try to throw me under the fucking bus.

58. In the wake of the Plaintiffs' forced resignation, the defendant Husamudeen was eye-witnessed in the Defendant COBA's office, at a COBA computer preparing three anonymous defamatory leaflets, laced with racially and sexually discriminatory allegations, entitled: (1) Why Does LaSonde Think She's The Real Deal?, (2) Politics Makes Strange Bedfellows, and (3) COBA's Bonnie & Clyde, Code Name: The Insurance Heist.

Page **17 of 21**

59. The Defendants COBA and Husamudeen's aforementioned leaflets which the Defendant
    Husamudeen was witnessed preparing and which he left in the printer after completion
    thereof, were widely disseminated to the DOC community of employees.

60. In pertinent part, the Defendants COBA and Husamudeen's leaflet entitled "Why Does
    LaSonde Think She's The Real Deal?" states, "...LaSonde...had her pillow and blanket
    so she could sleep on post...you can take the girl out of the ghetto but you can't take the
    ghetto out of the girl...now she stepped up her jail creds [sic] by committing a
    crime...this time when she goes to jail...maybe she can be the inmate grievance rep in
    her housing area."

61. In pertinent part, the Defendants COBA and Husamudeen's leaflet entitled "Politics
    Makes Strange Bedfellows" states,

> ...Joandrea Davis has shown little respect [sic] concern or care for
> correction officers...while sleeping with executive board member Allan
> Blake who took pride in going after Wardens and Deputy Wardens
> accused of doing the same thing that his lover and live in girlfriend WAS
> and IS guilty of doing...LaSonde's relationship with Blake was the only
> reason she wouldn't go after Joandrea Davis because they both had one
> thing in common, Allan Blake.

62. The Defendants COBA and Husamudeen's leaflet entitled "COBA'S Bonnie & Clyde"
    infers that Mr. Blake and Mrs. LaSonde are lovers and would be killed in the end.

63. Immediately after the union defendants forcibly obtained the Plaintiffs' resignations, the
    DOC defendants placed the Plaintiffs on modified duty, as a result of the union
    defendants' false allegations of insurance fraud.

64. Having been placed on modified duties, the Plaintiffs have had many of their rights as
    correction officers taken, e.g. the DOC defendants' have had their shields and guns taken.

65. The Plaintiffs believe that since the basis of their adverse personnel action (i.e., retaliatory loss of their rights as a result of unmerited modified duty), is the union defendants' claims of false allegations of insurance fraud against the Plaintiffs, that the Plaintiffs, union members, are without the protection of their union, since it is the union's false claim that forms the basis of their adverse personnel action. As a result, the Plaintiffs are without the contractual union protections that would normally protect employees from adverse personnel action (e.g. assistance and advice of the union against improper disciplinary or adverse personnel acts of the employer).

66. In losing their positions as executive board members, the Plaintiffs' each lose a net pay of about $5,000.00 per months, along with a host of other benefits such as a company car, and paid gas.

67. Because the Plaintiffs believe that Defendants Seabrook and COBA have asserted fabricated charges of fraud against them and falsely imprisoned them to coerce their resignations as described herein, in the days that followed the Plaintiffs informed the Defendants Seabrook and COBA that they would move the COBA recording secretary for purposes of bring charges of misconduct against the Defendant Seabrook. And the Plaintiffs attempted to so bring those charges. As a result thereof, the Defendants DOC, Schriro, and Davis, acting in support of and jointly with the union defendants retaliated against the Plaintiffs, for exercising their First Amendment rights in asserting charges of misconduct against the Defendant Seabrook.

68. In exercising their First Amendment rights, in asserting charges of misconduct against the Defendant Seabrook, the Plaintiffs spoke as citizens on matters of public concern, namely what the Plaintiffs believe to be the malfeasance of the president of a reputable not-for-

profit institution, and in doing so, such free speech was wholly unrelated to the Plaintiffs'

jobs as Correction Officers. Similarly, as the Defendant COBA's Financial Secretary,

Mrs. LaSonde's duties did not include the bringing of charges of misconduct against the

Defendant Seabrook. Moreover, as the Defendant COBA's Corresponding Secretary,

Mr. Blakes's duties did not include the bringing of charges of misconduct against the

Defendant Seabrook.

## JURISDICTION AND VENUE

69.    The claims asserted herein arise under federal law namely 42 U.S.C.A. § 1983, and 29

       U.S.C. § 159(a), 29 U.S.C. § 185(a), 29 U.S.C. § 187(a), and (b).

70.    The claims asserted, that arise under state and federal law, can be raised pursuant to this

       Court's supplemental jurisdiction pursuant to 28 U.S.C.A. §§ 1337, 1367.

71.    The Defendants COBA and City of New York's principle place of business is within this

       Judicial District, as such the Defendants' acts and practices complained of herein, are

       subject to this District's jurisdiction.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.) Awarding compensatory damages in favor of Plaintiffs against Defendants for all damages

sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including

interest thereon;

b.) Awarding punitive damages in favor of Plaintiffs against Defendants for all damages

sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including

interest thereon;

c.) Awarding Plaintiffs their reasonable costs and expenses incurred in this action, including

attorney's fees and expert fees; and

d.) Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: January 12, 2010

LAW OFFICES OF DAMOND
J. CARTER, PLLC
By: _____

Damond J. Carter, Esq.
445 Park Avenue 9th & 10th Floors
New York, New York 10022
(212) 745-1081 Telephone
(888) 711-4420 Facsimile